UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

PATRICIA J. HUGHES,

        **Plaintiff** *pro se*,

v.                                    5:01-CV-1860
        (NAM/DEP)

CRUCIBLE SERVICE CENTERS, DIV.
CRUCIBLE MATERIALS CORPORATION,

        **Defendant.**

───────────────────────────────────────

APPEARANCES:                          OF COUNSEL:

Patricia J. Hughes, *Pro se*

Jackson Lewis LLP                     Margaret Armstrong Weiner, Esq.
One North Broadway
Suite 1502
White Plains, NY 10601
*For Defendant*

Hon. Norman A. Mordue, D.J.:

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

    Defendant "Crucible Service Centers, Div. Crucible Materials Corporation" moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in this employment discrimination action. In her complaint filed on December 7, 2001, plaintiff *pro se* Patricia J. Hughes, who suffers from fibromyalgia and a musculoskeletal disorder, and is a recovering alcoholic, advances seven causes of action based on gender discrimination, retaliation for complaining about gender discrimination, disability discrimination, and

1

retaliation for complaining about disability discrimination in violation of Title VII, 42 U.S.C. § 2000e; the Americans with Disabilities Act, 42 U.S.C. § 12101; and New York State Executive Law § 296. Plaintiff opposes defendant's motion for summary judgment and cross-moved for summary judgment. Shortly after these motions were filed, plaintiff advised the Court that she wished to withdraw her cross-motion for summary judgment because she believes there are questions of fact requiring trial. The Court hereby grants plaintiff's request to withdraw her cross-motion, but nonetheless considers the arguments and submissions contained in her cross-motion in connection with her opposition to defendant's motion for summary judgment.

## II.   FACTS

The facts relating to plaintiff's remaining claims, viewed in the light most favorable to plaintiff, are as follows: In the 1980s, while attending Alcoholics Anonymous meetings, plaintiff met and became friends with Francis Petro, then President of Crucible Specialty Metals. In 1989, with Petro's help, plaintiff obtained a position as an Executive Assistant at Crucible's Service Center Division. At the time, plaintiff reported to Nathan Parkes, Vice President of Finance, and secondarily to Ted Furtch, Director of Management Information Services. Plaintiff's career at Crucible progressed steadily, and she received several promotions. By 1993, plaintiff was the Supervisor of Credit, Collections, and Budget, and had a full time assistant.

In 1993, both Petro and Parkes left Crucible, and Furtch became the Vice President of Finance for the Service Center. Shortly thereafter, David Allen became the Manager of Finance. Plaintiff reported directly to Allen and secondarily to Furtch. Plaintiff claims that it was at this point that she began to experience "negative treatment".

During the early 1990s, plaintiff began to have pain, stiffness, and soreness in her upper back, neck, and shoulders.  She was diagnosed with fibromyalgia and a musculoskeletal disorder.  Air conditioning aggravated her condition.  Parkes had agreed to close off the air conditioning vent above her desk.  In March or April 1994, after Furtch and Allen took over, plaintiff was forced to move and sit at a desk with air conditioning blowing on her.  Defendant reassigned plaintiff's assistant and plaintiff had to assume all of her assistant's duties.  In addition, plaintiff's title was changed, and she was required to report to Allen, a manager, instead of to a vice president.

In September 1994, plaintiff brought a note from her physician stating that exposure to air conditioning would aggravate plaintiff's fibromyalgia.  Plaintiff asserts she was allowed to move to a different seat, but states that she was still in the same area as the air conditioner.  Plaintiff moved to another area in the office in December 1994.  Partitions were installed after this move to help stop the air conditioning flow.

At the end of 1994, David Yates, President, commended plaintiff for her outstanding performance with regard to collections.  Further, plaintiff earned a bonus each month during 1995 for "reducing Day Sales Outstanding".

In March 1997, Lorraine Grassi became plaintiff's immediate supervisor.  At that point, plaintiff asked, and Grassi permitted plaintiff, to move to a different spot in the office.  In July 1997, Furtch permitted plaintiff to move to Grassi's space for one week while Grassi was on vacation.  In August 1997, plaintiff presented a note from her chiropractor indicating that cold air was not recommended for her condition.  Plaintiff was therefore moved to another workspace.  Plaintiff requested to move into Grassi's office, but received no response.

On December 7, 1997, after receiving a copy of Crucible's Sexual Harassment Policy, plaintiff approached Susan Walsh, Manager of Human Resources at the Service Center. Plaintiff told Grassi that she intended to speak with Walsh regarding the sexual harassment policy. Plaintiff informed Walsh that in 1994 and 1995, Allen and Furtch had created a hostile and oppressive work environment as described in the Sexual Harassment Policy. Walsh described the definition of sexual harassment to plaintiff and indicated that plaintiff's concerns did not fall under that policy.

On April 6, 1998, plaintiff received a review from Grassi giving plaintiff an overall rating of "1" indicating that plaintiff "met some requirements of the position-must improve." Plaintiff refused to sign the appraisal portion of her review because she disagreed with Grassi's evaluation of her performance.

Plaintiff also asserts that Grassi unfairly scrutinized her performance on "the rebate automation project" in June 1998, and that she was reprimanded for leaving work five minutes early in July 1998.

On August 21, 1998, plaintiff received another performance review from Grassi. That review indicated that plaintiff had improved in two areas and gave plaintiff an overall rating of "1". Plaintiff believed that her review should have reflected the positive aspects of her performance.

On October 30, 1998, Grassi asked plaintiff to retrieve documents from Crucible's off-site storage facility. According to plaintiff, Grassi knew plaintiff was unable to lift boxes, but insisted that plaintiff perform this task without help. Plaintiff became upset trying to explain to Grassi that she could not perform this task. Grassi discussed the matter with Furtch, and

plaintiff was permitted to take a male employee with her. As a result of that incident, plaintiff was suspended from work without pay for one day for being insubordinate.

According to defendant, during the fourth quarter of 1998, Harry O'Brien, President of the Service Center, informed Furtch that Crucible needed to undertake a reduction in force because of a decline in sales and downturn in business. O'Brien also told Furtch that department heads would need to suggest employees to be selected for the reduction in force. Furtch instructed Grassi to recommend one of her employees for the reduction. Grassi testified that Furtch told her to base her decision on an employee's job performance, reviews, ability to work with others and to get along as a group, and willingness to take on work. Grassi considered the performance, work habits, and willingness to work of the two employees she supervised, plaintiff and Debbie Fabrizio, and, in December 1998, selected plaintiff, whose performance she believed was not as good as Fabrizio's performance.

On January 4, 1999, Grassi took plaintiff to Walsh's office. Walsh informed plaintiff that her employment was being terminated in a forced reduction. Nine employees, five of which were men, were terminated as part of the reduction in force.

### III.     DISCUSSION

#### A.     Summary Judgment Standard

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence

establishing the existence of a disputed issue of material fact requiring a trial. *See id.* If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id.*

"Because direct evidence of ... discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotation marks omitted). A plaintiff must, however, provide more than conclusory allegations of discrimination to defeat a motion for summary judgment. *Id*.

Defendant claims it is entitled to summary judgment: (1) dismissing all allegedly discriminatory or retaliatory acts prior to September 10, 1998, on the basis that they are time barred; (2) dismissing all of plaintiff's New York State Human Rights Law claims on the basis that they are barred for lack of subject matter jurisdiction; (3) dismissing plaintiff's discrimination claim to the extent is it based on her status as a recovering alcoholic on the basis that the Court lacks jurisdiction; and (4) dismissing plaintiff's gender and disability discrimination and retaliation claims on the basis that plaintiff cannot establish a material issue of fact requiring trial on these claims.

**B.     Timeliness**

It is well settled that a "Title VII claim is time-barred if the plaintiff, after filing a charge with an appropriate state or local agency, does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'" *Elmenayer v. ABF Freight System, Inc*., 318 F.3d 130, 133 (2d Cir. 2003) (quoting 42 U.S.C. 2000e-5(e)(1) (2000)); *see National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("*Morgan*"). The ADA incorporates the Title VII statute of limitations. *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(e)).

"When a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred." *Butts v. City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993).

On July 1, 1999, plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"). The complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). The complaint alleged discrimination based on disability (fibromyalgia and recovering alcoholic), gender, and age, and retaliation for complaining about such discrimination. On August 14, 2001, the NYSDHR issued a no probable cause finding following an investigation. On November 14, 2001, plaintiff received a "Right to Sue" letter from the EEOC. On December 7, 2001, plaintiff filed the instant complaint. Defendant therefore argues that all acts occurring prior to September 10, 1998 are time-barred because they occurred more than 300 days before plaintiff filed her complaint with the NYSDHR. Plaintiff argues that her claims are not untimely because the continuing violation exception applies in this case.

The Second Circuit has instructed that the "statute of limitations for an unlawful employment practice begins to run when the unlawful practice occurs." *Forsyth v. Federation Employment and Guidance Serv.*, 409 F.3d 565 (2d Cir. 2005). Discrete discriminatory acts falling outside the limitations period are time-barred even if "they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*. In *Morgan*, the Supreme Court ruled that a hostile work environment claim is timely if an EEOC charge is filed within 300 days of any act that is part of the hostile work environment because such a claim is a continuing violation "comprised of a series of separate acts that collectively constitute one 'unlawful employment

practice.'" *Id*. at 117. The Supreme Court cited "termination, failure to promote, denial of transfer, or refusal to hire" as examples of discrete discriminatory acts. *Id*. at 113.

As an initial matter, plaintiff, who has reviewed *Morgan*, and the Supreme Court's discussion of the continuing violation exception as it applies to a hostile work environment claim, specifically states in her opposition and reply papers that she is not alleging a hostile work environment claim in this action. Accordingly, while cognizant of the plaintiff's status as a *pro se* litigant, the Court declines to infer a cause of action for a hostile work environment based on gender or disability from the complaint.

Plaintiff, citing *Weeks v. New York State Division of Parole*, 273 F.3d 76 (2d Cir. 2001), argues that the continuing violation doctrine applies in this case because she was subject to "an ongoing unlawful employment practice". *Weeks*, however, was abrogated when the Supreme Court foreclosed the use of the continuing violation doctrine in this manner in *Morgan*.

Furthermore, viewing the facts in the light most favorable to plaintiff, there is no basis for finding that the continuing violation exception applies in this case. Plaintiff claims that beginning in 1994, as part of defendant's pattern and policy of discrimination against her based on her gender and disabilities, plaintiff lost her full-time assistant, received demotions, suffered from sitting in cold air conditioning, had her title changed, was denied time to attend lunch time alcoholics anonymous meetings, received written reprimands, was suspended without pay, underwent intense review periods, and ultimately lost her job. Plaintiff further claims that in 1995, she discussed the allegedly discriminatory treatment with her supervisor and approached the President of the company. Plaintiff claims she was "severely disciplined" as a result. According to plaintiff, in December 1997, she complained of discriminatory treatment as

"outlined in Defendant's sexual harassment policy and again Plaintiff received an extremely negative performance review, after Plaintiff had been doing well in her position." Plaintiff asserts that defendant again subjected her to poor reviews and a suspension without pay prior to terminating her employment on January 4, 1999, all as a result of impermissible retaliation and discrimination. Plaintiff argues that her supervisors took these adverse employment actions in retaliation for her opposition to discriminatory treatment, because she was a successful woman, and because of her disabilities. Plaintiff, however, presents no evidence from which the Court could conclude that these events are sufficient to invoke the continuous violation doctrine.

Although Ted Furtch was plaintiff's ultimate supervisor through most of these events, that alone is not enough. Each act of retaliation for one of plaintiff's complaints, is a discrete act; each request for and denial of a reasonable accommodation for one of plaintiff's disabilities is a discrete act; and each written reprimand or suspension, and the termination of plaintiff's employment is a discrete act of alleged discrimination. *See Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 134 (2d Cir. 2003) (explaining that the message of the Supreme Court's decisions on the continuing violation doctrine "is that an employer performs a separate employment practice each time it takes adverse action against an employee, even if that action is simply a periodic implementation of an adverse decision previously made.") (citing *Bazemore v. Friday*, 478 U.S. 385 (1986)). Accordingly, all claims arising prior to September 10, 1998, are dismissed as time-barred.

**C.   New York State Claims**

Defendant argues that plaintiff's New York Human Rights Law claims must be dismissed for lack of subject matter jurisdiction. Defendant claims that plaintiff's filing of a

complaint with the NYSDHR constituted plaintiff's election of remedies and divests the Court of subject matter jurisdiction.

The election of remedies provision of the HRL provides, in relevant part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this chapter, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. EXEC. LAW § 297(9). "When a party files a complaint with the Division of Human Rights regarding alleged discrimination, that party is thereafter barred from 'commencing an action' in court regarding that discrimination." *Moodie v. Federal Reserve Bank*, 58 F.3d 879, 882 (2d Cir. 1995). Indeed, the New York State Court of Appeals has ruled that "[t]he statute . . . precludes [a] plaintiff from commencing an action in court based on the same incident." *Emil v. Dewey*, 49 N.Y.2d 968 (1980) (citation omitted).

Here, plaintiff filed a complaint with the NYSDHR alleging, *inter alia*, unlawful discrimination based on gender and disability, and retaliation for complaining about such discrimination. On August 14, 2001, the NYSDHR issued a no probable cause finding following an investigation. Although plaintiff opposes the motion based on several misapprehensions of the law in this area,[1] she does not argue that the conduct she presented to

---

[1] For example, plaintiff argues that in *Moodie*, the court dismissed the action because it lacked jurisdiction over the defendant - - the Federal Reserve Bank, and not because the plaintiff had filed a complaint with the NYSDHR. This reading of *Moodie* is incorrect. In *Moodie*, the Second Circuit found that the plaintiff's state law discrimination claims, which had been presented to the NYSDHR, were barred because "[b]oth the language of the statute and its consistent judicial interpretation establish that § 297(9) poses an insuperable jurisdictional bar to the advancement of Moodie's state law

the NYSDHR is different from the conduct about which she claims in the instant lawsuit. Accordingly, plaintiff's state law claims are dismissed for lack of subject matter jurisdiction.

### D.  Remaining Claims

Construed liberally, plaintiff's remaining claims are as follows: (1) that defendant terminated her employment because she was disabled, or because defendant regarded her as disabled; (2) that defendant imposed a one day suspension and terminated her employment in retaliation for engaging in protected activity under the ADA; (3) that defendant terminated her employment based on her gender; and (4) that defendant retaliated against her for engaging in activity protected under Title VII by terminating her employment.  Defendant seeks summary judgment on these claims.

#### 1.  ADA

##### a.  Discriminatory Discharge

To make out a *prima facie* case of discriminatory discharge under the ADA, a plaintiff must show that: (1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of the job with or without reasonable accommodation; and (4) she was discharged because of her disability. *Reeves v. Johnson Controls World Servs.*, 140 F.3d 144, 149-50 (2d Cir. 1998).  The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

---

claims in this litigation." *Moodie*, 58 F.3d at 884.

Plaintiff suffers from fibromyalgia and a musculoskeletal impairment and is a recovering alcoholic. Plaintiff claims her conditions impair the major life activity of working. According to plaintiff, air conditioning aggravates her condition and she can not lift more than fifteen pounds. Even assuming the truth of these assertions, and acknowledging that such conditions are physical impairments, the restrictions plaintiff claims to have leave a broad range of jobs open to her. *Sutton v. United Airlines Inc.*, 527 U.S. 471, 491 (1999) ("[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.). Thus, plaintiff has failed to make out a *prima facie* case of discrimination.

Plaintiff also argues that defendant regarded her as disabled, and terminated her employment based on that belief. A plaintiff is also disabled within the meaning of the ADA if she is "regarded" by her employer as having a physical or mental impairment that substantially limits a major life activity. 42 U.S.C. § 12102(2). A "regarded as" claim "'turns on the employer's perception of the employee' and is therefore 'a question of intent, not whether the employee has a disability.'" *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 646 (2d Cir.1998) (quoting *Francis v. City of Meriden*, 129 F.3d 281, 284 (2d Cir.1997)). "An employer's perception that the employee is "somehow disabled" is insufficient; the employer must regard the employee as 'disabled within the meaning of the ADA,' i.e., having an impairment that substantially limits a major life activity." *Id*. at 646.

In this case, it is undisputed that defendant's employees were aware that plaintiff had fibromyalgia and a musculoskeletal disorder and was a recovering alcoholic. Plaintiff claims that defendant's treatment of her, including removing her assistant, reducing her job duties,

changing her title, and selecting her for a reduction in force evidence its perception that her impairments substantially limited her in the major life activity of working. There is no basis, however, for a finding that plaintiff's superiors took these actions because they perceived her fibromyalgia or other impairments as limiting her ability to work. Indeed, there is no evidence that any of defendant's employees perceived plaintiff as having limitations beyond intolerance to air conditioning and an inability to lift heavy objects. Thus, plaintiff has failed to establish a *prima facie* case of discrimination on her "regarded as" disabled claim. Accordingly, plaintiff is entitled to summary judgment as a matter of law on all of plaintiff's disability discrimination claims.

### b.    Retaliation

Plaintiff claims that defendant retaliated against her for engaging in protected activity under the ADA, namely requesting a reasonable accommodation, by suspending her for one day and ultimately terminating her employment. As an initial matter, plaintiff may prevail on a retaliation claim even when the underlying conduct complained of was not unlawful "so long as [s]he can establish that [s]he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir.1999) (internal quotation marks omitted). The Court assumes plaintiff has done so for purposes of this motion.

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a

*prima facie* case of retaliation, plaintiff must show that: (1) she engaged in an activity protected by the ADA; (2) the alleged retaliator knew that plaintiff was involved in protected activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

### i.     October 30, 1998 Incident

Plaintiff has failed to establish a *prima face* of retaliation with regard to the October 30, 1999, incident. Plaintiff avers that when Grassi asked her to retrieve a box from the storage facility, she tried to tell Grassi that she could not lift the box and that she opposed the task. Requests for reasonable accommodations are protected activities under the ADA. *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999). Plaintiff, however, has not shown that Grassi or any of defendant's employees knew that plaintiff was indeed requesting a reasonable accommodation from lifting based on her medical conditions. Grassi testified that she knew plaintiff had concerns about lifting, but that she did not know "it was a medical thing until later". On November 3, 1998, after serving her suspension, plaintiff submitted a letter from her chiropractor, Michael Lentini, who advised that plaintiff as "a very slight woman at 5'0 and 100 pounds . . . should not be placed into a position of lifting and moving heavy objects, boxes, etc., due to her inherent biological physical limitations." Dr. Lentini's previous letters had indicated that plaintiff required an "ergonomically correct work station", and breaks to stretch. Thus, there is no evidence that Grassi knew plaintiff was requesting a reasonable accommodation based on a medical condition. Consequently, there is no basis for inferring that Grassi knew

14

plaintiff was engaging in a protected activity under the ADA. Accordingly, plaintiff has failed to establish a *prima facie* case of retaliation with regard to her one day suspension.

### ii.     Termination

The Court assumes plaintiff has met her minimal burden of establishing a *prima facie* case of retaliation based on her submission to defendant of a letter from her chiropractor dated November 3, 1998, regarding plaintiff's need for an ergonomically correct workstation and outlining plaintiff's lifting restrictions, her January 4, 1999, termination of employment, and the temporal proximity, two months, between her most recent request for a reasonable accommodation and the termination of her employment. *See Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation.").

"Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." *Id*. at 721. Grassi testified that she considered both Fabrizio and plaintiff in determining who to select for the reduction in force. Grassi stated that she based her decision on job performance, the ability to work with others and in a group, and the willingness to take on additional work, and selected plaintiff. Furtch reviewed Grassi's decision. On January 4, 1999, Grassi took plaintiff to see Walsh, who informed plaintiff that her employment was being terminated as part of a reduction in force. Accordingly, because defendant has satisfied its burden, the burden returns to plaintiff to "point to evidence that would be sufficient to permit a

rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Cifra*, 252 F.3d at 216.

Even assuming plaintiff has shown that defendant's reasons for selecting her for a reduction in force were false, she has adduced no evidence from which a factfinder could conclude that defendant's explanation was retaliation for her requests for reasonable accommodations regarding air conditioning, an ergonomic workspace, and lifting. Plaintiff submitted to defendant a letter dated November 3, 1998, from her chiropractor, and was informed of her termination on January 4, 1998. This showing is insufficient because there are no facts from which to infer that Grassi, Walsh, or Furtch terminated plaintiff's employment because she requested reasonable accommodations based on her medical conditions. Accordingly, defendant is entitled to summary judgment on this claim.

### 2. Title VII Gender Discrimination

#### a. Discriminatory Discharge

To evaluate plaintiff's Title VII claims against Crucible, the Court applies the three-step, burden-shifting process articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first step in the *McDonnell Douglas* formulation requires plaintiff to prove, by a preponderance of the evidence, a *prima facie* case of discrimination by the employer. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 446-47 (2d Cir. 1999), *cert. denied* 120 S. Ct. 2688 (2000). To establish a *prima facie* case, plaintiff must show that 1) she is a member of a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination. *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). The

burden of establishing a *prima facie* case is not onerous, *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); indeed, it has been described as "minimal." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). In the second step of the *McDonnell Douglas* test, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Bickerstaff*, 196 F.3d at 446. The defendant's burden of production is not a demanding one; it need only offer an explanation for the employment decision. *See St. Mary's,* 509 U.S. at 507. The burden then shifts back to plaintiff in the third step of the *McDonnell Douglas* process, to demonstrate that the proffered reason was not the true reason for the employment decision, and that gender was. *See Bickerstaff*, 196 F.3d at 446.

In this case, plaintiff easily meets the first three elements" she is a woman; she was qualified for her position; and defendant terminated her employment. Plaintiff fails to establish a *prima facie* case, however, because she has not adduced evidence in satisfaction of the fourth element - that the action occurred under circumstances giving rise to an inference of gender discrimination. Plaintiff was terminated as part of a reduction in force ("RIF"). Her immediate supervisor, Lorraine Grassi informed her of this decision on January 4, 1999. Eight others, including five men, were terminated as part of the RIF. Plaintiff claims that the events leading up to her termination, such as negative performance reviews and a suspension for insubordination, were all because of her gender, and demonstrate that her termination was also based on her gender. Having parsed the extensive submissions in this case, the Court finds no evidence that indicates that plaintiff was terminated under circumstances giving rise to an inference of gender discrimination. Although there is evidence of discord between plaintiff and

Grassi, and plaintiff and Furtch, that is insufficient absent any evidence that the discord was gender-motivated. Accordingly, defendant's motion for summary judgment is granted.

### b. Retaliatory Discharge

To establish a *prima facie* case of retaliation, plaintiff must show (1) that she was engaged in a protected activity known to defendant, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998). In the second step of the *McDonnell Douglas* process, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Bickerstaff*, 196 F.3d at 446. The third part of the *McDonnell Douglas* process requires plaintiff to demonstrate that her decision to engage in protected activity by complaining about gender discrimination – and not the reason proffered by the employer – was the true reason for the adverse employment decision. *Id*.

The Court assumes that plaintiff has satisfied her minimal burden of showing a *prima facie* case. In December 1997, plaintiff complained to Walsh that she had been subjected to sexual harassment in violation of company policy. Defendant terminated plaintiff's employment in January 1998, approximately one year later.

Defendant, as previously discussed, has articulated legitimate, non-discriminatory, reasons for terminating plaintiff's employment. Thus, the burden returns to plaintiff to show defendant's explanation is a pretext for retaliation.

Plaintiff asserts that one of the reasons defendant articulated for selecting her for the reduction in force was her performance review. In that regard, plaintiff points out that in her

April 6, 1998, performance review, Grassi gave plaintiff an overall rating of "1" which means "results achieved met some requirements of the position." In August 1998, Grassi gave plaintiff a similar performance review, and an overall rating of "1". At or about the same time, Grassi gave Fabrizio an overall rating of "3" which means "results achieved met all requirements of the position or at times exceeded some requirements."

Plaintiff claims that shortly before receiving her April review, Grassi told her that she was performing her primary duties well. Plaintiff further asserts that her review indicated that she was making personal telephone calls, but that Fabrizio's review did not contain such a statement, even through Fabrizio also made personal telephone calls. Plaintiff also questions whether Fabrizio's review was fabricated so that defendant could justify its position. Plaintiff argues that she received the April 6, 1998, performance review in retaliation for her December 1997 complaint that Furtch and Allen had sexually harassed her. Plaintiff points out that Furtch signed both of her performance reviews. Plaintiff claims that since her selection was based, in part, on her performance reviews, a connection may be drawn between her December 1997 complaint about sexual harassment, her April 1998 and August 1998 reviews, and her selection for a reduction in force. Plaintiff also asserts that Grassi unfairly scrutinized her performance on a project in June 1998, and that she was reprimanded for leaving work five minutes early in July 1998.[2]

---

[2] Plaintiff also questions the legitimacy of the reduction in force and seems to indicate that defendant fabricated the need for a reduction in force so it would have a basis for terminating her employment. Even assuming the truth of plaintiff's assertions, there is no basis for finding that defendant did so in retaliation for plaintiff's complaints of sexual harassment. Indeed, it is undisputed that the decision that a reduction in force was necessary was made during the fourth quarter of 1998.

Even assuming the truth of plaintiff's assertions and drawing all inferences in her favor, the Court finds the connection between her December 1997 complaint, her April and August 1998 performance reviews, and her selection for a reduction in force in December 1998, tenuous at best.  Further, there is no basis for concluding that defendant's employees singled her out in June and July 1998 and treated her unfairly in retaliation for her prior complaint of sexual harassment.  Consequently, there is no basis for a reasonable fact finder to infer that defendant's reasons for selecting plaintiff for a reduction in force were pretexts for unlawful retaliation.  Accordingly, defendant is entitled to summary judgment as a matter of law on this claim.

### IV.    CONCLUSION

For the foregoing reasons, and having considered all of plaintiff's remaining arguments and having found them without merit, it is hereby

ORDERED that plaintiff's request to withdraw her cross-motion for summary judgment is granted; and it further

ORDERED that the Clerk of the Court docket plaintiff's cross-motion submissions as supplemental opposition papers to defendant's motion for summary judgment; and it is further

ORDERED that defendant's motion for summary judgment is granted; and it is further

ORDERED that the complaint is dismissed.

IT IS SO ORDERED.

DATE:  September 30, 2005

Norman A. Mordue
U.S. District Judge